UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT LAWRENCE,

                    Petitioner,      **No. 1:12-CV-0814(MAT)**
        -vs-                          **DECISION AND ORDER**

HAROLD D. GRAHAM, Superintendent
of Auburn Correctional Facility,

                    Respondent.

---

## I.   Introduction

<u>Pro se</u> petitioner Robert Lawrence ("Lawrence" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in Respondent's custody in violation of his federal constitutional rights. Lawrence is incarcerated as the result of a judgment of conviction entered in New York State Supreme Court of Erie County (Michalski, J.) on May 13, 2009, following a jury verdict convicting him of one count of predatory sexual assault against a child (N.Y. Penal Law § 130.96) and one count of endangering the welfare of a child (<u>id.</u>, § 260.10(1)).

## II.   Factual Background and Procedural History

In 2006, the victim, S.W., was ten-years-old and lived with her mother, Rose Knapp ("Knapp"), in the City of Buffalo. At some point in 2006, Knapp became romantically involved with then thirty-three-year-old Petitioner, and invited him to move in with them. S.W. testified that she liked Petitioner and even called him "dad".

Once, S.W. stayed home sick from school. Knapp, a school bus aide, went to work; S.W.'s sisters went to school. Petitioner stayed home to babysit S.W. Sometime after lunch, S.W. saw Petitioner in her mother's bedroom smoking pot. She returned to her own room. Later on, Petitioner entered her room, pushed her onto the bed, removed her clothes, got on top of her, and "put his private inside of her private." T.41-45, 53, 82-83.[1]

S.W. testified that she was scared and was unable to push Petitioner off of her. She recalled that it hurt when he penetrated her. He moved back and forth for a while and when he was done, he got up and threatened to hurt her mother and sisters if she told anyone. He then left her bedroom. S.W. went to the bathroom, in tears. It hurt between her legs, and she noticed her urine was cloudy.

S.W. testified that she was too scared to tell her mother or sisters when they came home. Four days later, while at school, S.S. revealed the incident to her best friend. The friend in turn told a classmate, who informed the school's social worker, Deanna DeAngelis ("DeAngelis"), about the incident on April 18, 2007. DeAngelis privately spoke to S.W., who at first was very agitated that her friends had revealed her secret. As DeAngelis began to question her, however, S.W. put her head down and "shut down",

---

[1]
Numerals preceded by "T." refer to pages from the transcript of Lawrence's trial.

crying quietly. DeAngelis eventually called Knapp and requested that she come to the school immediately.

S.W. was referred to the Child Advocacy Center, where she was examined by pediatric nurse practitioner Deborah Dee ("N.P. Dee") on April 23, 2007. S.W. said that "about a year ago", Petitioner had "put his privates in her private", and she pointed to the area between her legs. S.W. told N.P. Dee that she had not told her mother immediately because she was afraid her mother would not believe her and that she would get into trouble.

N.P. Dee conducted a physical examination which was negative for objective findings of sexual contact. N.P. testified that blunt genital trauma usually does not leave medical evidence. N.P. Dee noted that S.W. had Turner Syndrome, a chromosomal disorder often resulting in short stature, as well as kidney, thyroid, and heart issues. Persons with Turner's Syndrome typically do not develop secondary sex characteristics; females with Turner Syndrome almost always experience amenorrhea and infertility.

Knapp testified that, in retrospect, she was able to observe changes in her daughter following the incident in that S.W. was "a lot more angry" and was wetting the bed almost every night. Prior to the incident, she had been more loving and only had somewhat of a problem with bed-wetting. S.W. also began waking up during the middle of the night.

The prosecution called licensed social worker Stefan Perkowski to testify about Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which he explained assists clinicians in understanding patterns of behavior common to sexually-abused children.

The jury returned a verdict convicting Petitioner as charged in the indictment. Petitioner was sentenced to an indeterminate term of 25 years to life on the predatory sexual assault conviction and a concurrent one-year definite term on his conviction for child endangerment. Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Petitioner filed a pro se supplemental appellate brief. On February 10, 2011, the Appellate Division unanimously affirmed the conviction. People v. Lawrence, 81 A.D.3d 1326 (4th Dep't 2011). Leave to appeal was denied by the New York Court of Appeals on June 8, 2011. People v. Lawrence, 17 N.Y.3d 797 (2011).

This timely habeas petition followed in which Petitioner raises the same grounds for relief that he asserted on direct appeal. Respondent answered the petition, interposing the affirmative defense of procedural default as to several of Petitioner's claims and arguing that, in any event, all of his claims lack merit. Petitioner did not submit a reply brief.

For the reasons that follow, the petition is dismissed.

## III. Merits of the Petition

### A.   Denial of Due Process and Equal Protection

#### 1.   Overview

Lawrence argues that he was denied his rights under the Due Process Clause and Equal Protection Clause because he was prosecuted for predatory sexual assault against a child (a Class A-I felony under New York law) instead of first degree rape (a Class B felony under New York law). According to Lawrence, predatory sexual assault against a child and first degree rape are identical statutes but are impermissibly subject to different sentencing parameters and plea bargain restrictions.[2] Since the statutes are identical, Lawrence asserts, the prosecution could not opt to prosecute him for the greater offense in a manner consistent with his due process and equal protection rights.

He also contends that the rationale of Apprendi v. New Jersey, 530 U.S. 466 (2000), was violated by the prosecution's decision to charge him with, and his eventual conviction of, the class A-II felony of predatory sexual assault against a child instead of the

---

[2]
   "Predatory sexual assault against a child is a class A-II felony, with a mandatory minimum sentence of ten years to life and a maximum of twenty-five years to life. By contrast, rape in the first degree is a class B felony, with a mandatory determinate sentence having a minimum of five years and a maximum of twenty-five years, followed by at least 5 years of post release supervision." People v. LaPage, 25 Misc.3d 390,  885 N.Y.S.2d 566, 569 (N.Y. Co. Ct. 2009) (citing N.Y. PENAL LAW § 70.80(4)(a)(I), § 70.45(2-a)(f)). Furthermore, "[t]he two crimes also have different plea bargain restrictions: with respect to the predatory sexual assault against a child charge, the plea must be at least to a class C violent felony; whereas a defendant may plead guilty to a class D violent felony in satisfaction of a charge of rape in the first degree." Id.

class B felony of first degree rape. He notes that in cases where the degrees of an offense overlap, the prosecution has the discretion to charge the higher degree based on its evaluation of the seriousness of the conduct. Lawrence argues that the jury likewise should have been instructed that it needed to adjudicate the "seriousness of the conduct" in order to convict him of predatory sexual assault against a child.

On direct appeal, the Appellate Division held that these contentions were not preserved for review. Lawrence, 81 A.D.3d at 1326 (citing, inter alia, People v. Schauer, 32 A.D.3d 1241, 1241 (4th Dep't 2006)). The Appellate Division alternatively held that they were without merit. Id. at 1326-27. Respondent argues that these claims are procedurally defaulted due to the Appellate Division's reliance upon an adequate and independent state ground to dismiss them. For the reasons discussed below, the Court agrees.

## 2. Procedural Default

Federal habeas review is generally prohibited if a state court rests its judgment on a state law ground that is "'independent of the federal question and adequate to support the judgment.'" Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). Even where "the state court has also ruled in the alternative on the merits of the federal claim[,]" Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990), "federal habeas review is foreclosed" provided that the "state

court has expressly relied on a procedural default as an independent and adequate ground. . . ." Id.; see also Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989)). A state procedural bar will generally be deemed "adequate" to preclude habeas review if it is "firmly established and regularly followed." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quotation omitted)). In determining adequacy of a state procedural bar, the Second Circuit has looked at (1) whether the alleged procedural violation was actually relied on in the state court, and whether perfect compliance with the state rule would have changed the state court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Cotto, 331 F.3d at 240 (citing Lee, 534 U.S. at 386-87).

Here, the Appellate Division relied upon the "contemporaneous objection rule" to dismiss Lawrence's claim. Codified at Section 470.05(2) of the New York Criminal Procedure Law ("C.P.L."), the contemporaneous objection rule requires that a criminal defendant make a timely and specific objection to the alleged error in order to preserve the error for appellate review. E.g., People v. Hawkins, 11 N.Y.3d 484, 492 (2008).

-7-

The New York courts have consistently applied C.P.L. § 470.05(2) to require criminal defendants who challenge the constitutionality of penal statutes with which they are charged to raise such a challenge before the trial court in order to preserve the issue for appellate review. E.g., People v. Baumann & Sons Buses, Inc., 6 N.Y.3d 404, 408 (2006); People v Davidson, 98 N.Y.2d 738, 739-40 (2002); People v. Snyder, 91 A.D.3d 1206, 1207 n.2 (3d Dep't 2012) ("Defendant's challenge to the constitutionality of the depraved indifference statute as impermissibly vague is unpreserved because she failed to raise such challenge before County Court[.]") (citations omitted); People v. Schaurer, 32 A.D3d at 1241; People v. Feris, 105 A.D.2d 1136, 1137 (4th Dep't 1984) ("Defendant raises, for the first time on appeal, a constitutional challenge to CPL 300.10(subd 3). Inasmuch as the challenge was not raised below and the Attorney-General was not notified, the issue has not been preserved for review[.]") (citation omitted). The Court's review of the pertinent caselaw confirms that it is a "firmly established and regularly followed state practice" to hold constitutional challenges to statutes unpreserved based upon the failure to present the constitutional issue to the trial court. After reviewing the Appellate Division's reliance on the contemporaneous objection rule in this case against the Cotto factors, the Court finds that it was an "adequate" state ground precluding habeas review.

Petitioner can overcome this procedural bar if he can show both "'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'" Smith v. Murray, 477 U.S. 527, 533 (1986) (quoting Wainwright v. Sykes, 433 U.S. 72,  84 (1977); Murray v. Carrier, 477 U.S. 478, 485 (1986)). The Supreme Court has explained that "actual prejudice" requires the petitioner to show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). A habeas petitioner establishes "cause" if he can show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. at 496. An alternative manner of overcoming a procedural default is for the petitioner to show that the "failure to consider [the claim] . . . will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750. However, this exception is limited to the extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995).

Petitioner did not submit a reply brief in response to Respondent's opposition memorandum of law, and thus has not addressed Respondent's procedural default argument. It is

Petitioner's burden to come forward with evidence of cause and resultant prejudice, or of a fundamental miscarriage of justice. See McCleskey v. Zant, 499 U.S. 467, 494 (1991). Petitioner has not attempted to make the required showing, and no bases for excusing the default are apparent on the record. The Court therefore dismisses this claim as procedurally defaulted and does not reach the claim's merits.

### B. Legal Insufficiency of the Evidence

#### 1. Overview

At the close of the prosecution's case, defense counsel made a motion for a trial order of dismissal with respect to both counts of the indictment, asserting that the evidence was insufficient to establish that sexual intercourse had occurred, or that it had occurred within the time frame alleged in the indictment. Petitioner argues that conflicting testimony concerning both the period of time he actually was living with the family and the time the alleged encounter occurred created reasonable doubt that any sexual contact between him and the victim ever took place, or took place between August 1, 2006, and September 25, 2006, the dates charged in the indictment. Petitioner asserts that because the proof did not establish beyond a reasonable doubt that he either was living in the victim's home or otherwise had access to the victim during the time-frame in question, there was inadequate

proof to establish that he had engaged in sexual intercourse with her.

The Appellate Division "reject[ed] [Petitioner]'s contention that the evidence is legally insufficient because of the uncertainty concerning the precise date on which the crime occurred[.]" Lawrence, 81 A.D.3d at 1327 (citing People v. Alteri, 49 A.D.3d 918, 919-20 (3d Dep't 2008) (evidence was sufficient to establish that conduct occurred on the first weekend of December 2005 as alleged in indictment; although defendant was at a party during part of the evening of Saturday, December 3, 2005, victim and defendant's girlfriend recalled that the incident occurred during the first weekend of December 2005); other citation omitted). Because the Appellate Division adjudicated Petitioner's legal insufficiency claim on the merits, the Court must apply the deferential standard set forth in 28 U.S.C. § 2254(d)(1). See, e.g., Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) ((noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").

### 2.   Legal Principles

For a habeas court assessing the legal sufficiency of the evidence supporting a petitioner's conviction, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Where, as here, the state court has adjudicated the merits of a petitioner's legal insufficiency claim, an additional layer of deference is due. See Coleman v. Johnson, --- U.S. ----, ----, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) (noting that it has "made clear" that insufficient evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). That is, a court may not grant habeas relief unless the state court applied the Jackson standard in an "objectively unreasonable" manner. Cavazos v. Smith, --- U.S. ----, 132 S.Ct. 2, 7, 181 L.Ed.2d 311 (2011) (per curiam) (reversing circuit court's decision granting habeas petition in light of finding that it was reasonable for state court to determine that jury's verdict was rational; circuit court had improperly re-weighed evidence and credibility of witnesses) (citing 28 U.S.C. 2254(d)(1)). Thus, the only question for this Court is whether the

Appellate Division reasonably determined that a rational trier of fact could have found, beyond a reasonable doubt, that Lawrence committed predatory sexual assault against the victim during the time-frame alleged in the indictment.

"A person is guilty of predatory sexual assault against a child when, being eighteen years old or more, he or she commits the crime of rape in the first degree, . . . as defined in this article, and the victim is less than thirteen years old." N.Y. PENAL LAW § 130.96. The indictment alleged that the assault occurred between August 1, 2006, and September 25, 2006.[3]  The time-frame alleged in the indictment thus covered part of summer recess and the start of the school year.

The victim testified that the abuse had occurred between mid-August 2006, and the end of September 2006, but she also testified that the abuse had occurred a month after Petitioner had moved in with her family, which was approximately the end of July 2006. Petitioner additionally points to Knapp's comment to N.P. Dee that Petitioner had not been living in her house since August 2006. T.130. However, Knapp testified that Petitioner had moved in with her family towards the "end of June" and lived with them until sometime "towards the end of September" of 2006. T.81-83. The

---

[3]

Predatory sexual assault against a child "is a continuing offense to which 'the usual requirements of specificity with respect to time do not apply[.]'" People v. Muhina, 66 A.D.3d 1397, 1398 (4th Dep't 2009) (quoting People v. Green, 17 A.D.3d 1076, 1077 (4th Dep't 2005); citations omitted)).

victim testified that the abuse occurred about one month after Petitioner had moved in with her family.

With regard to times when Petitioner had access to the victim, Knapp and the victim testified that Petitioner babysat for her once when the victim had stayed home sick from school. The victim recalled that the abuse occurred on a day that she was supposed to have been in school. Admittedly, the victim expressed uncertainty about whether she had attended summer school in 2006. However, it was for the jury to evaluate the witnesses' credibility and resolve any conflicting inferences to be drawn from their testimony. E.g., Quartararo v. Hanslmaier, 186 F.3d 91, 96 (2d Cir. 1999) (citing Herrera v. Collins, 506 U.S. 390, 401 (1993)). Given the time-frame alleged in the indictment and the testimony by the victim and her mother, the Appellate Division did not unreasonably determine, after viewing the evidence in the light most favorable tot he prosecution, that the jury, drawing reasonable inferences from the evidence, fairly and logically concluded that Petitioner sexually assaulted S.W. on the day that she had stayed home sick from summer-school. Petitioner's claim that he was deprived of due process because the jury convicted him upon less than legally sufficient evidence must be denied.

### C.   **Erroneous Admission of Expert Testimony**

At trial, the prosecutor called an expert psychological witness to testify about CSAAS. Petitioner contends that the trial

court's erroneous receipt of this evidence deprived him of a fair trial.

On direct appeal, the Appellate Division held that Petitioner had failed to preserve for review his contention regarding the admission of the expert testimony and that, in any event, it was without merit. Lawrence, 81 A.D.3d at 1326 (citing People v. Martinez, 68 A.D.3d 1757, 157-58 (4th Dep't 2009) (finding identical claim unpreserved pursuant to C.P.L. § 470.05(2)). Although the Appellate Division did not identify the specific statutory basis for its decision, it presumably found that the claim was procedurally barred due to trial counsel's failure to make a contemporaneous objection to the expert's testimony during trial as required by C.P.L. § 470.05(2). Respondent argues that the claim is procedurally defaulted as the result of the Appellate Division's reliance on an adequate and independent state ground to dismiss the claim.

The Appellate Division's reliance on C.P.L. § 470.05(2) was certainly "independent" of the judgment, notwithstanding its alternative ruling on the merits[4] of Petitioner's evidentiary claim. See Harris, 489 U.S. at 264 n. 10. The Court thus turns to the question of whether it was "adequate". See Lee, 534 U.S. at

---

[4] The Appellate Division concluded that "the expert described specific behavior that might be unusual or beyond the ken of a jury but did not give an opinion concerning whether the abuse actually occurred[,]" id. (citing Martinez, 68 A.D.3d at 1758), and therefore was not improper.

375 (noting that "adequacy" of state procedural bars to the assertion of federal rights "is itself a federal question"). Even though a rule generally is firmly established and regularly followed, it still might be inadequate to preclude federal review if its application would be "exorbitant" under the circumstances of the particular case. Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir.2006) (quoting Lee, 534 U.S. at 376). The Court's survey of the pertinent caselaw confirms that this rule has been regularly and consistently applied in circumstances akin to those presented by Petitioner's case. Accord, e.g., Anderson v. Phillips, 03CV5192NGG, 2005 WL 1711157, at *4 (E.D.N.Y. July 20, 2005) ("New York's preservation rule has also been regularly applied to claims challenging the admission of expert testimony.") (citing People v. Ray, 272 A.D.2d 203, 708 N.Y.S.2d 295 (1st Dep't 2000)). Since C.P.L. § 470.05(2) is "'firmly established and regularly followed' in the specific circumstances presented in [Lawrence's] case," Cotto, 331 F.3d at 240 (quotation omitted), the Court deems the procedural bar to be "adequate" to foreclose habeas review.

The next question is whether the procedural default can be excused.   As noted above, Petitioner has not responded to Respondent's arguments concerning procedural default and has not attempted to the showing required to overcome the default. The Court therefore dismisses this claim as procedurally barred and does not reach the claim's merits.

D.    **Erroneous Admission of Prior Bad Acts Testimony**

Petitioner contends that the trial court erroneously allowed the victim to testify that she had seen Petitioner "smoking pot" shortly before he sexually assaulted her. Also, the victim's mother was permitted to testify that she stopped seeing Petitioner and kicked him out her house because of his temper and the "verbal violence" he directed towards her near the end of their relationship. Petitioner argues that these evidentiary rulings violated People v. Molineux, 168 N.Y. 264, 291, 61 N.E. 286 (1901), because the admitted items of evidence were unduly prejudicial and only probative of his alleged propensity towards violence and criminality.

The Appellate Division summarily rejected these contentions on the merits. Lawrence, 81 A.D.3d at 1328 ("We have considered defendant's remaining contentions in the main brief and conclude that they are without merit[.]").

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "In general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue." Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995), aff'd mem., 71 F.3d 406 (2d Cir. 1995). "A habeas claim asserting a right to relief on Molineux grounds must rise to

the level of constitutional violation . . . because Molineux is a state law issue." Roldan v. Artuz, 78 F. Supp.2d 260, 276-77 (S.D.N.Y. 2000) (citations omitted).

"The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional." Green v. Herbert, No. 01CIV.11881, 2002 WL 1587133, at *12 (S.D.N.Y. July 18, 2002) (citation omitted); see also Jones v. Stinson, 94 F. Supp.2d 370, 391-92 (E.D.N.Y.) (stating that once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), rev'd on other grounds, 229 F.3d 112 (2d Cir. 2000)). Under New York law, evidence of prior bad acts is admissible to "prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." Molineux, 168 N.Y. at 293. It does not appear in this case that the reference to Petitioner's drug use tended to establish any of the foregoing elements enumerated in Molineux. Assuming, arguendo, that Petitioner's alleged "verbal violence" constitutes the type of prior bad act or crime that would be encompassed by the

Molineux rule, such evidence likewise does not fall within any of the Molineux exceptions.

Assuming that there was error under the Molineux rule, however, Lawrence has not established an error of constitutional dimension that warrants habeas relief. An erroneous evidentiary ruling warrants habeas relief "only where the petitioner can show that the error deprived him of a fundamentally fair trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)(quoting Dowling v. United States, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)). Demonstrating that erroneous admission of unfairly prejudicial evidence amounts to a denial of due process requires that the evidence, "viewed objectively in light of the entire record," must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan, 137 F.3d at 125 (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (in turn quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (holding that erroneously introduced evidence must be "crucial, critical, highly significant") (quotation omitted))).

Viewing the entire record before the jury, the Court cannot say that the victim's fleeting reference to having seen Petitioner using marijuana "remove[d] a reasonable doubt that would have existed on the record[,]" Collins, 755 F.2d at 19, had the prior crimes evidence not been introduced. Likewise, Knapp's reference to Petitioner's alleged "verbal violence" did not remove a reasonable doubt that would have existed on the record otherwise. Even if this testimony did come within the Molineux rule, any prejudice was mitigated by Knapp's direct testimony that Petitioner had not shown a violent temper during the three months he had lived with the family, and that she and Petitioner had never fought in front of the victim. T.83. In addition, the victim testified that she had liked Petitioner and had called him "dad".

In sum, the Appellate Division did not unreasonably apply clearly established Supreme Court precedent in declining to overturn Petitioner's conviction based upon alleged errors under Molineux. Habeas relief therefore is not warranted based upon this claim.

### E.    Ineffective Assistance of Trial Counsel

#### 1.    Overview

Petitioner here repeats the arguments from his direct appeal that trial counsel erroneously raised no challenge to the constitutionality of the new predatory sexual assault statute; failed to move for a trial order of dismissal on the ground that

the offense lacked "heinousness"; did not raise an <u>ex</u> <u>post</u> <u>facto</u> argument on the basis that the alleged incident may have taken place prior to June 23, 2006, the effective date of the predatory sexual assault statute; and failed to request an instruction on the lesser included offense of rape in the first degree. Petitioner also argues, as he did on direct appeal, that trial counsel committed several evidentiary errors. The Appellate Division specifically addressed the claim regarding counsel's failure to request a lesser included offense, finding that such a request would have had "little to no chance of success[.]" <u>People v. Lawrence</u>, 81 A.D.3d at 1327 (quotation omitted). The Appellate Division stated that it had "examined the remaining allegations of ineffective assistance" raised in the main and supplemental briefs, and "conclude[d] that they lack merit[.]" <u>Id.</u> (citation omitted). Because the Appellate Division adjudicated Lawrence's ineffective assistance claim on the merits, the standard set forth in 28 U.S.C. § 2254(d)(1) applies.

## 2. Legal Principles

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court announced a two-part test to evaluate whether counsel was ineffective: A defendant first must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and second, that "there is a reasonable probability that, absent the errors [by

counsel], the fact finder would have had a reasonable doubt respecting guilt." Id. at 687, 695. As discussed further below, the Court finds that all of Lawrence's theories in support of his ineffective assistance of trial counsel claim fail to satisfy Strickland on de novo review of the merits. Lawrence necessarily cannot show that the Appellate Division unreasonably applied the Strickland standard for purposes of 28 U.S.C. § 2254(d)(1). See Bell v. Cone, 535 U.S. 685, 698-99 (2002) ("For respondent to succeed [under § 2254(d)(1), . . . he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance. . . .").

### 3. Counsel's Alleged Errors

#### a. Failure to Preserve a Constitutional Challenge

With regard to trial counsel's failure to comply with the contemporaneous objection rule and raise a challenge before the trial court to the constitutionality of the  predatory sexual assault statute, Petitioner cannot demonstrate that he was prejudiced by counsel's omission. This is because the Appellate Division analyzed the merits of Petitioner's constitutional challenge, notwithstanding the lack of preservation. Since Petitioner has not demonstrated prejudice, the Court need not address whether trial counsel's failure to preserve the claim was objectively unreasonable under prevailing professional norms of practice. See Strickland, 466 U.S. at 697.

### b.    Failure to Make a Trial Order of Dismissal

Petitioner contends that trial counsel's performance was deficient because he failed to move for a trial order of dismissal on the ground that the offense charged lacked "heinousness". However, "heinousness" is not an element of the offense of predatory sexual assault against a child. Trial counsel was not professionally unreasonable in failing to make a motion that did not have a colorable basis in the law. Likewise, Petitioner was not prejudiced by counsel's failure to make such a motion, as it had no likelihood of success.

### c.    Failure to Assert <u>Ex</u> <u>Post</u> <u>Facto</u> Challenge

Petitioner asserts that trial counsel erred in failing to challenge the predatory sexual assault statute as violative of the <u>ex</u> <u>post</u> <u>facto</u> clause on the basis that the alleged incident may have taken place prior to the effective date of the predatory sexual assault statute (June 23, 2006). As noted above, the Appellate Division concluded that the evidence was legally sufficient to establish that the assault occurred during the time-frame alleged in the indictment, which was after the statute's effective date. Thus, an <u>ex</u> <u>post</u> <u>facto</u> challenge had little to no chance of success on the merits, and Petitioner was not prejudiced by trial counsel's failure to assert such a claim.

### d.    Failure to Request a Lesser Included Offense

According to Petitioner, trial counsel was ineffective in failing to request that the jury be instructed, in the alternative, on the lesser included offense of rape in the first degree. On direct appeal, the Appellate Division specifically rejected this contention, noting that "[w]here, as here, the statutes contain identical language, it is for the court to determine whether to charge the lesser offense based on a reasonable view of the evidence[.]" Lawrence, 81 A.D.3d at 1327. Such a charge, however, "'should be reserved for the "unusual factual situation[," which is] not presented by the evidence here[.]'" Id. (quoting People v. Discala, 45 N.Y.2d 38, 43 (1978)). Thus, the Appellate Division concluded, Lawrence's "defense counsel was not ineffective in failing to move for such a charge because any such motion would have had '"little or no chance of success[.]"'" Id. at 1328 (quoting People v. Caban, 5 N.Y.3d 143, 152 (2005)).

In Discala, the New York Court of Appeals considered the issue of when to charge lesser included offenses in cases involving violations of the coercion statutes. According to the Court of Appeals, a charge-down is warranted in those "unusual factual circumstances" "where the method of coercion is by threat of personal physical injury which for some reason lacks a heinous quality." Discala, 45 N.Y.2d at 43 (holding that denial of lesser included offense was not abuse of discretion where the coercion

-24-

used by defendant did not lack a heinous quality; rather, "the malevolent nature of the threat [was] at once obvious in defendant's proposal to kill or have the victim killed"). Here, the victim testified that after Petitioner raped her, he threatened that he would hurt her sisters or her mother if she told anyone. The victim was a child of tender years, and Petitioner was an authority figure in whom she had reposed feelings trust and affection. Given the state of the law in New York on this issue, the Court agrees with the Appellate Division that a request for a charge-down had no reasonable probability of success, as the trial court in all likelihood would have determined that the coercion utilized by Petitioner did in fact exhibit a quality of heinousness. Therefore, Petitioner is unable to demonstrate that he was prejudiced by counsel's omission.

### e.   Failure to Object to Hearsay Testimony

Petitioner argues that trial counsel was ineffective in failing to object, on hearsay grounds, to the victim's testimony that she told her friend about being raped. Petitioner asserts that in order for the testimony to be admissible under the "prompt outcry" exception,[5] it would have had to have been disclosed "at the first suitable opportunity." McDaniel, 81 N.Y.2d at 17 (citation omitted).   The promptness of the complaint is not

---

[5]
"In [New York], evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place[.]" People v. McDaniel, 81 N.Y.2d 10, 16 (1993).

measured in terms of time alone, but depends also on the reasons for the delay. Id. Here, the conversation between the victim and her friend occurred four days after the incident, and Petitioner argues that this was not a sufficiently "prompt outcry". However, statements made days or even weeks after the incident may still fall under the prompt outcry exception where, as here, the victim did not earlier disclose the fact of abuse due to fear or embarrassment. See, e.g., People v. Rodriguez, 284 A.D.2d 952, 728 N.Y.S.2d 597 (4th Dep't 2001) (complaint to school social worker made nine days after last sexual abuse incident was admissible where victim explained that she feared retribution by defendant, her mother's live-in boyfriend); People v. Stuckey, 50 A.D.3d 447, 855 N.Y.S.2d 141 (1st Dep't 2008) (child's report of sexual intercourse with her father, made approximately three days after last incident, came within "prompt outcry" exception to hearsay rule, in prosecution for course of sexual conduct against a child in the first degree, in light of child's young age and her expressed fear of retribution if she disclosed the abuse).

After reviewing the pertinent caselaw, the Court cannot say that there is any reasonable probability that the outcome of Petitioner's trial would have been different had counsel objected to this testimony. The victim was young and was living with her assailant, who was in a romantic relationship with her mother. Petitioner also had threatened to harm her sisters and her mother

if she revealed the abuse. The delay of four days in disclosing the rape, under these circumstances, most likely would not have precluded the testimony from coming in under the "prompt outcry" exception. In other words, given the relative nature of "prompt" as determined by the courts in New York, any objection in all likelihood would have been overruled and Petitioner cannot show that he was prejudiced failure to object.

### f.    Failure to Object to Expert Testimony

Petitioner assigns fault to counsel for failing to object to the expert testimony provided on CSAAS. However, Petitioner cannot demonstrate that he was prejudiced by counsel's omission because the Appellate Division analyzed the merits of his related claim that the CSAAS testimony was improperly admitted, notwithstanding the lack of preservation. See Lawrence, 81 A.D.3d at 1327 (finding no merit to contention that CSAAS testimony was admitted in error, where expert described specific behavior that might be unusual or beyond the ken of a jury but did not give an opinion concerning whether the abuse actually occurred) (citations omitted).

### g.    Failure to Object to Bad Acts Testimony

Petitioner contends that trial counsel was ineffective in failing to object to the victim's testimony that she observed Petitioner smoking marijuana, and in failing to make a sufficiently detailed objection to the victim's mother's testimony concerning Petitioner's temper. The Appellate Division summarily rejected

these claims of ineffective assistance as without merit. The Appellate Division also summarily rejected the underlying evidentiary contentions as without merit. Petitioner thus cannot demonstrate that he was prejudiced by trial counsel's failure to preserve the claims by timely objections.

In the alternative, the Court finds that Petitioner has failed to demonstrate a reasonable probability existed of a more favorable verdict had counsel successfully objected to these items of testimony. In evaluating an attorney's failure to object to unfavorable evidence, courts have focused on the totality of the proof before the jury and extent of damage caused by the evidence to the defense case. See, e.g., Kimmelman v. Morrison, 477 U.S. 365, 390 (1986) (While evidence admitted due to counsel's failures to object "may not have been as important as other components of the State's case, it may have tipped the balance."); Quartararo v. Fogg, 679 F. Supp. 212, 240 (E.D.N.Y. 1988) ("Where . . . petitioner's claim rests in part upon the failure to object to the admission of evidence, it is necessary to determine whether the evidence was so damaging that counsel's failure to object deprived petitioner of the 'reasonably effective assistance' to which he is entitled."). As discussed above, the Court has found that neither the testimony regarding Petitioner's marijuana use or his bad temper was so unduly prejudicial that it removed a reasonable doubt that the jury would have had regarding his guilt, had the testimony

not been offered. Similarly, the Court cannot find that the challenged evidence "tipped the balance" in the prosecution's favor or was "so damaging" that the failure to prevent its admission effectively deprived Petitioner of the assistance of counsel.

## V. Conclusion

The application for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
     HON. MICHAEL A. TELESCA
     United States District Judge

Dated:      February 13, 2014
            Rochester, New York